INSTITUTO NACIONAL DE COMER-
CIALIZACION AGRICOLA
(INDECA), Plaintiff,

v.

CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY, et
al., Defendants.

No. 81 C 1934.

United States District Court,
N.D. Illinois, E.D.

Dec. 1, 1983.

ration organized under Guatemalan law, has as part of its responsibility the purchase of foodstuffs and agricultural staples for the Guatemalan people on international markets. It sues a group of defendants for an allegedly fraudulent scheme in which Indeca was bilked of over $5 million in its attempted purchase of 6,000 metric tons of black beans that proved to be nonexistent.[1]

Continental Illinois National Bank and Trust Company of Chicago ("Continental") has filed an amended answer, in part asserting 12 arguments labeled "affirmative defenses." Indeca now moves to strike all those defenses as insufficiently pleaded or insufficient as a matter of law. For the reasons stated in this memorandum opinion and order, Indeca's motion is granted in part and denied in part.

### Indeca's Claimed Facts [2]

Indeca sought to purchase 6,000 metric tons of black beans from Rumex International, Inc. ("Rumex"). To facilitate that purchase Indeca negotiated with Banco de Guatemala ("Banco") for the issuance of a letter of credit (the "Letter"). Under the provisions of the Letter (like all letters of credit), Banco as issuing bank was required to render payment when presented with documents in complete conformity with the Letter's requirements. Because the seller of the beans was located in the United States, Banco engaged Continental's services to confirm the Letter.

On September 5, 1980 several Rumex principals appeared at Continental and presented various documents as being in claimed conformity with the Letter's requirements. Upon review, Continental employees observed some of the documents were nonconforming. After changes were made in the documents, on September 9 Continental determined a complete set of documents in full conformance with the Letter's requirements had now been sub-

Kathleen Heenan McGuan, Jerris Leonard & Assoc., Washington, D.C., Edward J. McGovern, Evergreen Park, Ill., for plaintiff.

Matthias A. Lydon, John A. Dienner, III, of Pierce, Lydon & Griffin, Robert L. Tucker of Tucker & Watson, Dennis C. Waldon of Keck, Mahin & Cate, Robert S. Atkins of Freeman, Atkins & Coleman, Duane C. Quaini, Jeffrey Lennard, Joseph A. LaVela of Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., Richard Wynn, New York City, Richard C. Entin of Shapiro, Leder, Kimler, Entin & Werksman, Deerfield Beach, Fla., Gerald D. Mindell, Arthur F. Radke, Patricia T. Adelman, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Instituto Nacional de Comercializacion Agricola ("Indeca"), a quasi-national corpo-

---

1. Like P–K4, this paragraph has become the "standard opening" for this Court's several opinions in this case.

2. In the main this statement of facts has been lifted from this Court's January 21, 1982 memo-

randum opinion and order (the "Opinion"), 530 F.Supp. 279, 280 (N.D.Ill.1982). Other facts asserted by Continental will be reflected in the text discussion.

mitted. Continental honored the Rumex draft and transferred the appropriate sum into the Rumex account. Continental then debited Banco's account for the sum paid to Rumex plus Continental's fee and forwarded the documents to Banco.

Banco in turn transmitted the documents to Indeca, which received them September 24. On September 30 Indeca signed a statement confirming that the documents conformed to the Letter's requirements and authorizing payment to Rumex.

Time passed, and the beans (already overdue by September 30) never arrived in Guatemala. In February 1981 Indeca's attorneys communicated with Continental's attorneys and stated orally the documents negotiated by Continental and then approved by Banco and Indeca had not in fact conformed to the Letter.

Indeca brought suit against several defendants, including Continental, to recover the money paid for the nonexistent beans. Indeca charges Continental with (1) fraudulent conduct in knowingly assisting Rumex in the fraudulent procurement of payment of the Letter (Complaint Count IV) and (2) negligence in accepting nonconforming documents (Complaint Count III).

### Pleading Affirmative Defenses

Fed.R.Civ.P. ("Rule") 8(c) requires that some defenses be pleaded affirmatively. Its list of 19 specific items is not exhaustive: In addition, a party must set forth "any other matter constituting an avoidance or affirmative defense." What the Rule terms "an avoidance"—what the common law used to term a "confession and avoidance" or "shift and avoidance"—is a more restrictive concept than loose practice would have it. See *Black's Law Dictionary* 55, 125 (5th ed. 1979).

■ This Court has discussed that problem at some length in *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736–37 (N.D.Ill.1982). Because there may sometimes be difficulty in deciding whether a particular matter would be put in issue by a general denial, the pleader is usually given the benefit of the doubt when setting forth a purported affirmative defense. But the basic concept of an affirmative defense is an *admission* of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable. *Id.* at 736. Affirmative defenses are of course also subject to the general pleading requirements of Rules 8(a), 8(e) and 9(b), generally requiring only a short and plain statement of the facts but demanding particularity as to the circumstances constituting fraud and mistake. *Id.* at 737; 5 Wright & Miller, *Federal Practice & Procedure: Civil* § 1274.

■ Accordingly this Court must determine as to each of Continental's "affirmative defenses" (for convenience, cited by number simply "AD—"):

1. whether it is properly designated as an affirmative defense;

2. if so, whether it is adequately pleaded under Rules 8 and 9; and

3. whether, even if the first two questions are answered "yes," it is legally insufficient under a standard identical to that in Rule 12(b)(6): Can Continental prove any set of circumstances in support of the "affirmative defense" that would defeat Continental's liability?

*Lirtzman v. Spiegel, Inc.*, 493 F.Supp. 1029, 1031 (N.D.Ill.1980); *Bobbitt*, 532 F.Supp. at 737. It should of course be understood, as *Bobbitt* pointed out, that striking an affirmative defense on technical (essentially definitional) grounds does not necessarily eliminate its substantive argument from the case.

### AD 1

Continental alleges Indeca is barred from recovering because Indeca has defrauded Continental, one of Rule 8(c)'s specifically enumerated affirmative defenses. Moreover Continental has alleged fraud with the requisite particularity, thereby complying with Rule 9(b). *Darling & Co. v. Klouman*, 87 F.R.D. 756, 757–58 (N.D.Ill.1980); *Alco Financial Services, Inc. v. Treasure Island Motor Inn, Inc.*, 82 F.R.D. 735, 737 (N.D.Ill.1979).

■ But Continental's own statement of operative facts shows its fraud defense is legally insufficient. One integral element of fraud is the intent to damage the claimant through the misrepresentations made. 19 I.L.P. *Fraud* § 4, at 556; *see Almgren v. Engelland,* 94 Ill.App.3d 475, 477, 50 Ill.Dec. 66, 68, 418 N.E.2d 1060, 1062 (1st Dist.1981). By contrast Indeca's alleged scheme to defraud Continental involved as an essential element Banco reimbursing Continental, by definition eliminating any Continental damages (AD ¶ 19(e) and (f)). Indeca's intent so to reimburse Continental belies any intent to damage Continental. AD 1 is stricken as legally insufficient.

### AD 2

■ Here Continental says Indeca is estopped by its own fraud. Estoppel too is an enumerated Rule 8(c) affirmative defense, so no technical bar to its assertion exists. But again Continental's assertion of estoppel is legally insufficient, for detrimental reliance is an essential part of estoppel. 18 I.L.P. *Estoppel* §§ 22–23. Because Continental was reimbursed by Banco, it did not rely on Indeca's representations to its detriment (AD ¶ 32). AD 2 is also stricken as legally insufficient.

### AD 3

■ Continental asserts Indeca's recovery is barred by its unclean hands and because it is in *in pari delicto* with Continental. Though not enumerated in Rule 8(c), both are proper as affirmative defenses under the standards specified earlier. Continental has set forth a statement of facts in support of both defenses (AD §§ 24–34, 45), in compliance with Rule 8(a). If Continental succeeds in proving Indeca engaged in wrongdoing in presenting documents to Continental, Indeca could be barred from recovering any damages against Continental. *Kuehnert v. Texstar Corp.,* 412 F.2d 700, 704 (5th Cir.1969);

*Union Pacific R.R. Co. v. Chicago & Northwestern Ry. Co.,* 226 F.Supp. 400, 410 (N.D.Ill.1964). AD 3 will stand as a pleading matter (but see this Court's contemporaneously-issued opinion dealing with the *in pari delicto* defense unsuccessfully asserted by several of the other defendants in this action).

### AD 4

■ Continental alleges Indeca caused its own harm by entering into illegal contracts with Rumex and Banco. However, that precise question is already put in issue by Continental's denial of Indeca's allegation that Continental caused Indeca's harm (Answer to Amended Complaint ¶¶ 65, 66). Issues raised by denial are not proper affirmative defenses (though if the matter is unclear, as is not the case here, the defense may be left to stand). 2A *Moore's Federal Practice* ¶ 8.27[3], at 8.25. AD 4 is stricken as an improper affirmative defense.

### AD 5

■ Continental says Indeca cannot recover for Continental's negligence in performing the Continental-Banco contract, because Indeca fraudulently induced Continental to enter the contract by non-disclosure of the scheme to defraud Continental. That has the same flaw as AD 1, and AD 5 is similarly stricken.

### AD 6

■ Continental alleges Indeca's contributory negligence. That defense was originally listed in Rule 8(c) at a time when nearly every jurisdiction held it wholly defeated a plaintiff's claim. Now however Illinois no longer applies that doctrine. *Alvis v. Ribar,* 85 Ill.2d 1, 28, 52 Ill.Dec. 23, 35, 421 N.E.2d 886, 898 (1981).[3] By accepting the Complaint's allegations (the essence of a true affirmative defense), AD 6 thus poses the potential for *reduction* of Continental's liability, not the total *defeat* of Indeca's claim. That does not constitute an

---

**3.** Although Continental asserts Illinois law may not apply, it provides no guidance on what other law should apply.

avoidance, and AD 6 is stricken. In fact Continental's mere denial of the amount of Indeca's damages could also permit assertion of Indeca's own negligence, and that would independently support the striking of AD 6.

### AD 7

■ Continental alleges the Rumex-Indeca contract was procured in violation of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd–2. It claims public policy precludes a foreign government from recovering damages for violation of such a contract.

FCPA prohibits domestic concerns from bribing foreign officials to assist such concerns in obtaining business. 15 U.S.C. § 78 dd–2(a)(1). Violation of public policy has the same confession-and-avoidance quality as Rule 8(c)'s enumerated affirmative defenses. In addition, Continental's statement of operative facts asserts Rumex' bribe of an Indeca employee to obtain the contract (AD ¶¶ 12–18, 35).

True enough, Indeca points out (1) FCPA's criminal prohibition is against the domestic concern and not the foreign agency and (2) no case law upholds Continental's ability to base its rights on the statute. Those factors appear to implicate the analysis of *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) and its progeny,[4] but not enough has been advanced to require striking this defense at the threshold pleading stage. *Mohegan Tribe v. State of Connecticut*, 528 F.Supp. 1359, 1362 (D.Conn.1982).

### AD 8

■ Continental alleges Indeca has released its claims against Continental, another enumerated Rule 8(c) defense. Once more that facially permissible affirmative defense is legally insufficient. In Illinois, a release is a contract by which one person abandons claims against another. *Whitehead v. Fleet Towing Co.*, 110 Ill.App.3d 759, 762, 66 Ill.Dec. 449, 452, 442 N.E.2d

1362, 1365 (5th Dist.1982). None of the facts pleaded by Continental show any such contractual undertaking by Indeca; indeed the pleaded facts refute any such contract (AD ¶¶ 45, 48). AD 8 is also stricken.

### AD 9

■ Continental says Indeca waived its rights against Continental, also a proper affirmative defense under Rule 8(c). Continental's factual allegations also comply with Rule 8(a) (AD ¶¶ 28–34). Finally, it appears Continental may be able to prove some set of circumstances constituting Indeca's intentional relinquishment of its known right to hold Continental liable for the discrepancies in documentation. *Pastrana v. Federal Mogul Corp.*, 683 F.2d 236, 241 (7th Cir.1982). AD 9 will stand.

### AD 10

■ Continental alleges Indeca's negligence is greater than Continental's, thus blocking Indeca's recovery. Illinois has adopted the "pure" form of comparative negligence (basing damages on relative degrees of fault) and not its "modified" version (which forecloses recovery entirely when the plaintiff is more than 50% negligent). *Alvis*, 85 Ill.2d at 27–28, 52 Ill.Dec. at 35, 421 N.E.2d at 898. Consequently the discussion as to AD 6 is fully applicable here as well, and AD 10 is stricken.

### AD 11

■ Continental alleges Indeca's laches in pursuing its claim prevents its now seeking relief. Though permissible under Rule 8(c), that defense is not supported by the pleaded facts. Laches involves unreasonable and inexcusable delay in filing suit. *Lingenfelter v. Keystone Consolidated Industries, Inc.*, 691 F.2d 339, 340 (7th Cir.1982). Here Indeca filed suit in 1981, less than one year after the alleged events, and nothing else in the

---

**4.** Though Continental asserts the matter as an affirmative defense, conceptually it appears to pose the same question as whether to permit a private cause of action.

pleadings (by any party) supports a laches defense. AD 11 is stricken too.

### AD 12

Continental asserts Indeca's failure to state a claim upon which relief can be granted. That contention has already been determined adversely to Continental. Opinion, 530 F.Supp. at 280. Moreover such legal insufficiency (properly assertable under Rule 12(b)(6)) is not a proper affirmative defense under Rule 8(c), for "a true affirmative defense raises matters outside the scope of plaintiff's prima facie case and such matter is not raised by a negative defense...." 2A *Moore's Federal Practice* ¶ 8.27[4], at 8–260. AD 12 must also fall.

### Conclusion

AD 1, 2, 4–6, 8 and 10–12 are stricken. Only AD 3, 7 and 9 survive.